FILED

AUG 13 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| GREG A. EGER, ET AL.,<br><br>Plaintiffs-Appellants,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant-Appellee. | No.19-17022<br><br>D.C. No.<br>4:18-cv-00199-DMR<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Northern District of California
Donna M. Ryu, Magistrate Judge, Presiding

Submitted August 10, 2020**
Pasadena, California

Before: CALLAHAN and BUMATAY, Circuit Judges, and M. WATSON,*** District Judge.

Greg and Julie Eger ("Appellants") filed this lawsuit challenging the Internal

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

** The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

*** The Honorable Michael H. Watson, United States District Judge for the Southern District of Ohio, sitting by designation.

Revenue Service's ("IRS") determination that Appellants could not treat the operation of three rental properties as "rental activity" under the Internal Revenue Code ("Code"). In the district court, the parties submitted a joint statement of facts along with cross motions for summary judgment.[1] The district court ruled in the Government's favor. We review a grant of summary judgment *de novo*. *Taylor v. List*, 880 F.2d 1040, 1044 (9th Cir. 1989).

<u>Facts and Relevant Tax Provisions.</u> For the 2007, 2008, and 2009 tax years, Appellants sought refunds on their federal income taxes based on losses incurred in connection with three vacation rental properties in Mexico, Colorado, and Hawai'i.[2] The only question here is whether Appellants' operation of the vacation properties was "rental activity" under 26 U.S.C. § 469.[3]

---

[1] The parties also confirmed at oral argument on the summary judgment motions that there were no disputed material facts.

[2] The Colorado and Mexico properties were included all three years, while the Hawai'i property was not included in 2007. Appellants grouped these three properties, which are the focus of this case, together with thirty-three other rental properties they owned as a single rental real estate activity.

[3] Internal Revenue Code Section 469 generally disallows deductions based on passive activity losses. 26 U.S.C. § 469(a)(1). "Rental activity" is typically a passive activity under the Code. *Id.* at 469(c)(2). However, the parties agree that Greg Eger's material participation in the real property trade or business permitted him to deduct losses from rental activity under Section 469(c)(7)(A)–(B).

"Rental activity" is defined in the Code as "any activity where payments are principally for the use of tangible property." 26 U.S.C. § 469(j)(8). The Treasury regulations have added that an activity is generally "rental activity" when "tangible property held in connection with the activity is used by customers or held for use by customers." 26 C.F.R. § 1.469-1T (e)(3)(i)(A). These regulations, however, exclude from the definition of "rental activity" the use of tangible property when the "average period of customer use for such property is seven days or less" during that tax year. 26 C.F.R. § 1.469-1T(e)(3)(ii)(A). This exclusion is at the heart of the parties' dispute.

Discussion. The parties first disagree on who the relevant "customer" was for the vacation properties. For each property, Appellants entered into an agreement with a third-party management company to handle marketing and rental of the property.[4] When people rented the vacation property, Appellants were paid a portion of the rental cost. Appellants contend that the management companies were the customers for purposes of calculating the average period of use. The Government asserts that the individuals who actually rented out the properties were the customers. The question of who is properly considered the customer is critical

---

[4] Two of these agreements were labeled "Rental Program Agreement," and the third was referred to as a "Consulting Agreement."

in this case because Appellants have not argued that the renters used the property for an average of more than seven days.

Because neither the Code provisions nor Treasury regulations at issue define "customer," we interpret words "as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979). When deciding who is a customer between individuals paying to stay in a property and the company responsible for marketing the property and managing payments, few people who are not creative tax lawyers would argue it is the latter.

Moreover, we must read this regulation, and the term "customer," "in their context and with a view to their place in the overall statutory scheme." *Wilderness Soc'y v. United States FWS*, 353 F.3d 1051, 1060 (9th Cir. 2003) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)). As discussed above, the Code definition of "rental activity" is "any activity where payments are principally for the use of tangible property." 26 U.S.C. § 469(j)(8). So the payment is tied to the "use" of the property. The regulations then state that "rental activity" is generally when "tangible property held in connection with the activity is used by customers or held for use by customers." 26 C.F.R. § 1.469-1T (e)(3)(i)(A). Reading these provisions together, the individual paying to use the

property is the "customer." In this case, it is the renters, not management companies, paying to use the properties.

Appellants' agreements with the management companies show that they were intended to pay the management companies a percentage of rent received at the vacation properties in exchange for services the management companies provided. The management companies acted as Appellants' representatives, not customers of the properties.[5]

Finally, we reach the same conclusion when consulting dictionary definitions of "customer," which is appropriate to better understand the plain language of the regulations. *See Af-Cap Inc. v. Chevron Overseas (Congo) Ltd.*, 475 F.3d 1080, 1088 (9th Cir. 2007). The American Heritage dictionary defines a "customer" as "one that buys goods or services." *The American Heritage Dictionary of the English Language* 450 (4th ed. 2000). The most relevant definition in Black's Law Dictionary is similar, saying a customer is "[a] buyer or purchaser of goods or services; esp., the frequent or occasional patron of a business establishment." *Customer*, Black's Law Dictionary (11th ed. 2019). These

---

[5] For example, the Colorado and Hawai'i agreements stated that the management company would "act as the sole and exclusive rental agent to offer" the property for rental. The Mexico agreement stated that the management company would "provide services to [Appellants] with regard to the use of [their property] by others when it is available for that purpose."

dictionary definitions further support the conclusion that the renters of the vacation properties were the customers, because they were the ones actually purchasing a service, as opposed to the rental companies who were themselves being paid for providing a service to Appellants.

Because Appellants did not attempt to prove that the average stay by renters was greater than seven days, summary judgment in favor of the Government was appropriate.[6] Appellants have not demonstrated that the use of the properties fell within the definition of "rental activity."

**AFFIRMED.**

---

[6] The district court's reasoning for granting summary judgment in favor of the Government was different; however, this Court may affirm "on any ground supported by the record, even if not relied upon by the district court." *United States ex rel. Ali v. Daniel, Mann, Johnson & Mendenhall*, 355 F.3d 1140, 1144 (9th Cir. 2004) (citing *Simo v. Union of Needletrades*, 322 F.3d 602, 610 (9th Cir. 2003)).